# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RICKY LYNN NELSON,

        Petitioner,

v.                                    Case Number: 06-CV-10190

RAYMOND BOOKER,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITIONER'S
## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Ricky Lynn Nelson, a state inmate, presently incarcerated at the Ryan Road Correctional Facility in Detroit, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his conviction and sentence for possession with intent to deliver over 650 grams of cocaine, Mich. Comp. Laws § 333.7401(2)(a)(I). For the reasons stated, Petitioner's application for writ of habeas corpus will be denied.

## I. BACKGROUND

This cases arises out of an incident that occurred on April 6, 2001, in Pontiac, Michigan. There, the Pontiac police officers, responding to a tip provided by a "confidential informant," arrested Petitioner in front of his residence, after he exited a vehicle driven by another individual, David Castelew. The police received information that Petitioner was a narcotics dealer and that he would be at his residence sometime that evening. Subsequently, they established a surveillance of Petitioner's residence.

When the police officers witnessed Petitioner exiting from the vehicle, carrying a shopping bag, they apprehended him. A search of the bag revealed 952.7 grams of cocaine. Petitioner was then taken to the Pontiac police station where a search of his person revealed $505.00 in cash, a pager, a cell phone, and a driver's license with the name John Walls on it.

Prior to trial, on July 18, 2001, defense counsel requested permission from the trial court to have the contraband independently tested at a laboratory of his choosing. The trial court denied the motion, stating that defendant was not entitled to a qualitative analysis of the contraband but rather, he could have the contraband weighed independently.

Subsequently, on August 20, 2001, the date trial was to begin, defense counsel filed a motion to adjourn because one of his key witnesses was out of town. It was defense counsel's position that his witness would testify that "substantially less, in fact, frankly, approximately 50 grams of cocaine was purchased on a given date and time by an individual[,]" thus demonstrating that less cocaine was involved in the case. (Motion Hr'g Tr. 14, August 20, 2001.) Additionally, at that hearing, defense counsel argued that he made arrangements with a laboratory to have the contraband independently weighed but that the contraband had not been made available to him. In response, the prosecutor argued that she had not received any discovery from defense counsel, including a witness list. After admonishing defense counsel, the trial court granted the motion and rescheduled the trial for September 20, 2001.

Then, on September 20, 2001, the date of trial, defense counsel, once again, argued to the trial court that the contraband had not been provided to him, to which the

prosecutor responded that she did not receive a proposed witness list or other discovery materials. Accordingly, the trial court precluded defense counsel from calling any witnesses. However, the prosecutor discovered such a list the next day, which had apparently been filed on the day of trial. Defense counsel denied filing the witness list himself. Rather, he stated that his office probably sent it over and that they had been instructed to do so "weeks ago." (Trial Tr. vol. II, 127-128, Sept. 21, 2001.)

The first witness to testify at trial was Lieutenant Christopher L. Flo, a laboratory specialist employed by the Michigan State Police Crime Laboratory in Sterling Heights, Michigan. Lieutenant Flo performed the testing on the evidence found and determined that it was cocaine. It was his testimony that the cocaine weighed about 951.9 grams, without the packaging.

Pontiac Police Officer Jerry Pittman testified next. Officer Pittman first told the trial court and the jury that, prior to staking out Petitioner's residence, he verified that Petitioner had two outstanding warrants for his arrest for unpaid traffic tickets. Officer Pittman then proceeded to testify that, on April 6, 2001, at about 11:30 p.m., he witnessed a car pulling up to Petitioner's residence, where the stake-out was set up. He then saw a man, who was carrying a brown shopping bag in his left hand, exit the vehicle and walk toward the house. Officer Pittman testified that he had seen that man in the past, personally, and therefore, he recognized him as being Petitioner. According to Officer Pittman's testimony, he then notified the other officers to move in and arrest Petitioner, at which point they did. Officer Pittman said that, as Petitioner was approached by the officers, he saw Petitioner drop the shopping bag near his feet.

According to Officer Pittman's testimony, he recovered the bag, and, upon inspection, found what looked like a shoe box containing two taped-together packages of cellophane. It was Officer Pittman's testimony that he took the box, with its contents, and drove it to the police station, where it was examined and tested. Officer Pittman testified that the contents of the bag tested positive for cocaine; at the police station, the cocaine, with its packaging, weighed about 952.7 grams and had an estimated street value of about twenty to thirty-five thousand dollars.

Officer Kevin Harris, a police officer who was assigned to the Oakland County Task Force Narcotics Enforcement Team, testified next. According to Officer Harris' testimony, when he arrived at the scene, he conducted a search of the car. Inside the car, Officer Harris found a male, a female, and two children but did not find any grocery bags or plastic bags. It was Officer Harris' testimony that he then transported Petitioner to the police station, where he booked and searched Petitioner. Officer Harris testified that he found a pager, a cell phone, and $500 on Petitioner, along with a driver's license with the name John Walls on it.

Officer Jason Teelander, another Pontiac police officer with the narcotics division, who was also part of the surveillance team that night, testified that he and another officer, Bryan Wood, were the first officers to see Petitioner exit the vehicle on the night in question. It was Officer Teelander's testimony that they approached Petitioner and told him that he was under arrest for outstanding warrants and ordered him to lie on the ground. According to Officer Teelander's testimony, Petitioner complied, and, when he did, he dropped the grocery bag that he was carrying. Officer Teelander testified that it was his impression that Petitioner appeared to be ill and was

sweating.  Officer Teelander stated that he then asked Petitioner if he was okay, to which Petitioner replied "I'm fucked."  (Trial Tr. vol. I, 233, Sept. 20, 2001.)

Officer Bryan Wood also testified; he was the evidence officer that day, which meant that he collected all the evidence (cocaine) at the scene, field-tested, packaged, and sent it to the laboratory for further testing.  It was Officer Wood's testimony that the weight of the cocaine, when he weighed it, was approximately 535 grams per bag, packaging included.  Officer Wood's testimony corroborated that of Officer Teelander.

Officer Stephen Norwicki of the Michigan State Police Forensic Science Laboratory testified as to the chain of custody of the cocaine.  Officer Norwicki testified that he received the evidence from Officer William Olsen from the Pontiac police department.  Officer Jerri Gray, the crime-scene investigator in this case, tested the evidence for fingerprints; none was found.  However, Officer Gray said that it was very rare to find fingerprints on plastic bags.

Sergeant Diane Peters also testified as to the chain of custody.  She acknowledged that Officer Norwicki turned over the evidence to her, and then, she transported it back to the Pontiac police department, where she turned it over to one of the crime-scene investigators to be tested for latent fingerprints.  Officer William Olsen testified that he transported the evidence to the Michigan State Police Crime Laboratory.  According to Officer Olsen, once the evidence was tested, he then retrieved it and returned it to the Pontiac police department.

Sergeant Robert Miller testified that he was the one who took Petitioner's statement, after Petitioner was given his *Miranda*[1] rights. More specifically, Sergeant Miller said that Petitioner would not answer any questions regarding his knowledge of the contents of the bag. On cross-examination, Sergeant Miller acknowledged that it was Petitioner's right under *Miranda* to not answer his questions.

Petitioner testified on his own behalf. According to Petitioner's testimony, as he was walking into his residence on the night in question, the police approached him, shouting racial slurs, and ordered him to lie on the ground. It was Petitioner's testimony that he never saw the bag or the box containing the cocaine before he appeared in court. According to Petitioner's testimony, he was charged with the present offense because in 1999 he refused to become an informant for the police. Petitioner testified that his refusal to "snitch" insulted two of the police officers involved in the case–Officers Ford and Miller. (Trial Tr. vol. II, 76, Sept. 21, 2001.) Petitioner said that the officers told him, at that time, that they would "get him." (Trial Tr. vol. II, 77, Sept. 21, 2001.)

On cross-examination, Petitioner testified that David Castelew was the person who drove him to his residence on the evening he was arrested and that Castelew would know that he did not have a bag in his possession when he left the vehicle. Over objection, the prosecutor asked whether Petitioner had asked Castelew to testify. Petitioner said yes but that Castelew was unavailable. It was Petitioner's testimony that he did not ask Castelew to make a statement to the police. Petitioner was also questioned, at length, about why he had refused to answer certain questions posed by

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

the police, after his arrest and after he was given his *Miranda* warnings.  Petitioner continued to deny that he possessed the bag.

On rebuttal, Officer Pittman testified that, in 1999, Petitioner was a passenger in a vehicle, where cocaine was found on a street approximately fifty-to-one-hundred feet from that vehicle.  Officer Pittman acknowledged that Petitioner was not charged with a crime at that time because there was insufficient evidence to charge him.  However, Officer Pittman acknowledged that Petitioner was asked to become an informant for the police but that he refused to do so.

Sergeant Miller was also recalled to testify regarding Petitioner's statement that was taken at the police station.  Over defense counsel's objections, the statement was admitted into evidence.  Sergeant Miller acknowledged that Petitioner neither reviewed nor signed the statement.

Last to testify on rebuttal was Officer Teelander.  He was recalled to rebut Petitioner's testimony that the police officers had used racial slurs when they arrested him.  Officer Teelander testified that he did not use racial slurs and that he did not hear any racial slurs being used when Petitioner was arrested on the night in question.  The prosecution then rested.

The jury found Petitioner guilty of the charged offense.  On October 23, 2001, the trial court sentenced Petitioner to twenty-five to fifty years imprisonment, with forty-nine days credit.

Following, Petitioner filed his right of appeal in the Michigan Court of Appeals, raising the following claims:

I.    Trial counsel failed to render effective assistance to [Petitioner] below.

II.   The trial court abused its discretion by permitting the prosecutor to introduce irrelevant and prejudicial 404(b) evidence to the jury.

III.  The prosecutor impermissibly shifted the burden to [Petitioner] by asking him why his witness was not at trial.

Petitioner's conviction and sentence were affirmed on appeal. *People v. Nelson*, No. 237820 (Mich.Ct.App. April 15, 2003); *People v. Nelson*, 469 Mich. 950, 671 N.W.2d 51 (2003).

Subsequently, Petitioner filed a motion for relief from judgment in the trial court, raising a sentencing claim–that the amendment to Mich. Comp. Laws § 333.7403 is to be applied retroactively and that he is entitled to re-sentencing under the new guidelines set forth in the amended statute. The trial court denied the motion on October 8, 2004. *People v. Nelson*, 01-178246-FC (Oakland County Circuit Court, Oct. 8, 2004). Petitioner's motion for reconsideration was also denied. *People v. Nelson*, 01-178246-FC (Oakland County Circuit Court, Dec. 8, 2004).

Petitioner then filed applications for leave to appeal from that decision in both the Michigan Court of Appeals and the Michigan Supreme Court, which were denied. *People v. Nelson*, No. 260238 (Mich.Ct.App. Sept. 23, 2005); *People v. Nelson*, 474 Mich. 983, 707 N.W.2d 203 (2005).

Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I.    Trial counsel failed to render effective assistance to [Petitioner]

II.     The trial court abused its discretion by permitting the prosecutor to introduce irrelevant and prejudicial 404(b) evidence to the jury and by allowing the prosecutor to question [Petitioner] at length regarding his decision not to make a complete statement to the police.

III.    The prosecutor impermissibly shifted the burden to [Petitioner] by asking him why a particular witness was not at trial.

IV.     [Petitioner has] a constitutional right to be sentenced within the [l]egislatively mandated sentencing guidelines and to retroactive application of the new sentencing law[.]

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this court's habeas corpus review of state-court decisions and states in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d); *Harpster v. State of Ohio*, 128 F.3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs

when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411.

### III.  DISCUSSION

### A.  Claim #1.  Ineffective assistance of counsel.

In his first claim, Petitioner argues that trial counsel was ineffective for (1) failing to file a witness list "so that he could have called witnesses regarding the amount of cocaine he possessed," (2) failing to request a limiting instruction regarding "the appropriate use of M.R.E. 404(b) testimony," and (3) failing to have the cocaine weighed by an "independent laboratory."  (Petitioner's Reply Br. 5.)  The court will address those issues seriatum.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at 687.  The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'"  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting

*Strickland*, 466 U.S. at 688; additional internal quotations omitted).  However, when assessing counsel's performance, the reviewing court should afford counsel great deference.  *Strickland*, 466 U.S. at 689 (observing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" and that a convicted person who seeks to criticize his attorney's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").

Second, a petitioner must show that counsel's deficient performance prejudiced petitioner.  A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial."  *Strickland*, 466 U.S. at 689.

In the "prejudice" prong of the *Strickland* test, the United States Supreme Court held that a defendant must show more than "that the errors had some conceivable effect on the outcome of the proceeding;" instead, the defendant must be able to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 693-94.  No matter how deficient an attorney's performance, the *Strickland* Court reasoned, in the absence of a showing of prejudice, "it cannot be said that the conviction [ ] resulted

from a breakdown in the adversary process that renders the result unreliable," and a defendant is, thus, not entitled to a new trial or sentencing.  *Id.* at 687.

Following immediately on the heels of its articulation of the prejudice

requirement, the *Strickland* Court provided for an exception in rare circumstances.  In some instances, a court must simply presume that prejudice resulted:

> In certain Sixth Amendment contexts, prejudice is presumed.  Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.  So are various kinds of state interference with counsel's assistance.  Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost.  Moreover, such circumstances involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent.
>
> * * *
>
> Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  They cannot be classified according to likelihood of causing prejudice.  Nor can they be defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid.  Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.  Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense.

*Strickland*, 466 U.S. at 692 (citations omitted).

In *United States v. Cronic*, 466 U.S. 648 (1984), the United States Supreme Court elaborated on the presumed-prejudice exception to which it alluded in *Strickland*, recognizing that "[t]here are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658.  The fundamental question, the *Cronic* Court suggested, is whether the trial "process [has lost] its character as a confrontation between adversaries," if so, then "the constitutional guarantee is violated."  *Id.* at 656-57.  Under those circumstances, then, it is not necessary to demonstrate actual prejudice.  The *Cronic* Court went on to say "[m]ost obvious, of course, is the complete [i.e., actual] denial of counsel."  *Id.* at 659.  That is not the issue in this case.  The *Cronic* Court however also noted the

possibility of a constructive denial of counsel, when, although counsel is present, "the performance of counsel [is] so inadequate that, in effect, no assistance of counsel is provided." *Id.* at 654 n. 11. Equally important, the *Cronic* Court held, is the case in which "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," because "then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Id.* at 659. The *Cronic* Court concluded with a rather imprecise dictate: that the inquiry into actual prejudice may be dispensed with "only when surrounding circumstances justify a presumption of ineffectiveness." *Id.* at 662.

### 1. Failing to file a witness list

Here, Petitioner first claims that his attorney was ineffective in failing to file a witness list. The Michigan Court of Appeals denied Petitioner's claim that his attorney was ineffective. The state appellate court stated in pertinent part:

> The failure to call witnesses or present other evidence constitutes ineffective assistance only when it deprives the defendant of a substantial defense. A substantial defense is one that might have made a difference in the outcome of the trial. *People v Hyland*, 212 Mich App 701, 710; 538 NW2d 465 (1995), vacated in part on other grounds 453 Mich 902 (1996). Defendant asserts that counsel knew of witnesses who would testify that the amount of cocaine involved in the incident was less than what was testified to by the police. However, defendant's theory was that he never possessed any amount of cocaine on April 6, 2001, and that the police framed him to exact revenge for his refusal to become an informant in 1999.

*Nelson*, No. 237820, slip op. at 2-3.

In order for a criminal defendant to demonstrate prejudice from a defense attorney's allegedly ineffective assistance of counsel for failing to call certain witnesses, a defendant must not only show that the testimony of the witnesses would have been

-13-

favorable but that the witnesses would have testified at trial. *See Reed v. Sowders*, 904 F.2d 708 (6th Cir. 1990) (citing *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir.1985)). Petitioner's claim must fail because he has provided no credible evidence that the witness, Castelew, was, at the time of trial, willing to waive his own Fifth Amendment rights against self-incrimination in order to exculpate Petitioner. *See United States v. Stevens*, 978 F.2d 565, 568 (10th Cir.1992).

Furthermore, this court finds that Petitioner has presented no evidence to show that the state court's conclusion that counsel was effective was in error. Petitioner's defense at trial was that the cocaine was not his at all and that the police were framing him; it was therefore not unreasonable for counsel to limit his presentation to that defense –the cocaine was not Petitioner's at all– rather than to expand the field and present witnesses that might tend to undermine the principal defense only to challenge the amount of cocaine at issue. Although courts have held that inconsistent defenses are permitted, *See Mathews v. United States*, 458 U.S. 58, 64-65 (1988) (citing *Johnson v. United States,* 426 F.2d 651, 656 (1970) (rape defendant argued both that act did not take place and that victim consented to act), *cert. dism'd,* 401 U.S. 846 (1971); *see also Womack v. United States,* 336 F.2d 959 (1964), they might not be the wisest course. Indeed, the court predicts that a criminal defense attorney who chooses to forego the presentation of logically inconsistent defenses will seldom be found to have performed, for that reason, in a constitutionally ineffective manner.

Here, the court finds that defense counsel's performance did not constitute ineffective assistance of counsel where the record shows that defense counsel carefully cross-examined the prosecution witnesses and impeached their credibility and in his

closing argument emphasized the inconsistencies and weaknesses in the testimony of the various witnesses. *See Krist v. Foltz*, 804 F.2d 944, 948-49 (6th Cir.1986).

Therefore, the court finds that the state appellate court's conclusion in this regard was not contrary to or an unreasonable application of Supreme Court precedent.

### 2. Failing to request a limiting instruction regarding 404(b) evidence

Second, Petitioner alleges that trial counsel should have requested a limiting instruction regarding the 404(b) evidence. That evidence consisted of testimony regarding the prior criminal episode that Petitioner claimed led to his being framed for the offense alleged in this petition. According to Petitioner's own testimony, in 1999, he had contact with the police; Petitioner testified that the police had asked him to become an informant for them but when he refused, they then told him that they would "get him." (Trial Tr. vol. II, 77, Sept. 21, 2001.)

To rebut that testimony the prosecution recalled Officer Pittman, who testified that, in 1999, the police found some cocaine about fifty to one hundred yards away from a car that was occupied by Petitioner and another individual named Charles Williams. The police believed that Petitioner had thrown the cocaine from the window but there was not enough evidence to charge him. On that basis, it is Petitioner's position that his trial counsel should have requested a limiting instruction.

Concerning Rule 404(b) evidence, the introduction of the evidence *per se* is a matter of state law which may not be reviewed by a habeas court. An issue regarding the admissibility of evidence or error in state procedure does not rise to a level of constitutional magnitude unless it can be viewed as so egregious that the petitioner was denied a fundamentally fair trial. *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir.), *cert.*

*denied*, 125 S.Ct. 126 (2004). To determine whether the admission or inadmissibility of evidence has denied a defendant's fundamental due process rights, the court should consider the extent to which the evidence is "critical" to the case, whether it "tend[s] to exculpate" the accused, and whether the evidence bears "persuasive assurances of trustworthiness." *Clark v. O'Dea*, 257 F.3d 498, 503 (6th Cir. 2001).

The Sixth Circuit has specifically upheld state convictions against similar habeas challenges involving Rule 404(b) evidence on the ground that the use of such evidence in those cases was not fundamentally unfair. *See Burton v. Renico*, 391 F.3d 764, 773-775 (6th Cir. 2004); *Coleman v. Mitchell*, 244 F.3d 533, 542-543 (6th Cir. 2001).

The Michigan Court of Appeals, the last court to issue a reasoned decision in this case, stated:

> The alleged deficiencies of failure to call Castelew and failure to obtain an independent weighing of the cocaine was trial strategy designed to bolster defendant's claim that he was not guilty of any offense. We do not substitute our judgment for that of counsel on matters of trial strategy. *People v Rice (On Remand)*, 235 Mich App 429, 445; 597 NW2d 843 (1999). Furthermore, given that the other acts evidence provided the basis for defendant's theory that he was framed by the police and was properly admitted, it is likely that counsel determined that an instruction limiting the jury's consideration of this evidence would have diminished the defense. We conclude that counsel's failure to seek a limiting instruction was trial strategy. *Id.*
>
> Evidence of other crimes, wrongs, or acts is inadmissible to prove the character of a person in order to show that he acted in conformity with it, but may be admissible for other purposes, such as to show proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident. MRE 404(b)(a). The other crimes, wrongs, or acts may be contemporaneous with or prior to or subsequent to the conduct at issue. *Id.* To be admissible, other acts evidence must be offered for a proper purpose, must be relevant, and its probative value must not be substantially outweighed by its potential for unfair prejudice. A proper purpose is one other than establishing the defendant's character to show his propensity to

commit the offense. *People v. Starr*, 457 Mich 490, 496; 577 NW2d 673 (1998). The admissibility of other acts evidence is within the discretion of the trial court. *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998).

Defendant argues that the trial court abused its discretion by allowing the prosecutor to introduce evidence regarding the details of the 1999 incident through questions directed to him on cross-examination and through rebuttal testimony. He asserts that evidence regarding the details of the incident was irrelevant and was improper as it had as its sole purpose to demonstrate his propensity to commit narcotics-related offenses.

We disagree. Defendant voluntarily injected the issue of the 1999 incident when he testified on direct examination that he believed that his refusal to become an informant motivated the police to frame him. Defendant referred to the incident in general terms, but clearly stated that he had contact with the police in 1999. The prosecution sought to introduce evidence concerning the facts of the incident in order to weaken defendant's claim that the police had a vendetta against him. That evidence was admissible under M.R.E. 404(b)(1) and was proper rebuttal evidence. *Starr*, *supra*; *Pesquera*, *supra*. Furthermore, defendant opened the door to evidence regarding the details of the incident. He has waived any claim of error. *People v Williams*, 84 Mich App 226, 229; 269 NW2d 535 (1978).

*Nelson*, No. 237820, slip op. at 3.

This court agrees with the state court's decision that the evidence admitted was proper because Petitioner opened the door to such evidence regarding the details of the incident. The trial court did not err in admitting the 404(b) evidence and trial counsel was not ineffective for failing to request a limiting instruction in that regard.

Against that backdrop, the Michigan Court of Appeals' holding as to trial counsel's failure to request a limiting instruction regarding the introduction of the 404(b) evidence was not contrary to, or an unreasonable application of, clearly established federal law so as to entitle Petitioner to habeas relief. As such, Petitioner is not entitled

to habeas relief on this claim.

### 3. Failing to request an independent laboratory test regarding the actual weight of the cocaine

Finally, Petitioner argues that trial counsel was ineffective for failing to request an independent laboratory test regarding the actual weight of the cocaine confiscated. Defense counsel, however, did eventually move for an independent laboratory test. Nonetheless, it is Petitioner's position that defense counsel failed to take additional steps to ensure that the laboratory test was conducted. However, any defense centered on the possibility of challenging the quantity of the cocaine would have flown in the face of extremely clear evidence presented by the prosecution's expert. Christopher Flo, a specialist with the Michigan State Police Crime Lab, testified that when the substances submitted were weighed, the combined weight of the samples was 952.7 grams before analysis and 951.9 grams after analysis. This is obviously not a case in which the weight was close to a statutory margin or break-point. The court agrees with the decision of the Michigan Court of Appeals, as stated above, and finds that Petitioner is not entitled to habeas relief on this claim.

### B. Claims #2 and #3. The prosecutorial misconduct claims.

In claims #2 and #3, Petitioner contends that he is entitled to habeas relief because the prosecutor engaged in misconduct by shifting the burden of proof; Petitioner contends that the prosecutor's cross-examination was improper because the prosecutor (1) commented on his silence while being questioned at the police station about the contents of the bag after he was given his *Miranda* rights, and, (2) improperly asked him why he failed to call Castelew as a witness. Respondent contends that the

claims lack merit.

Prosecutorial misconduct must be so egregious as to deny the petitioner a fundamentally fair trial before habeas corpus relief becomes available. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974). In this regard, "the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). Specifically, the Sixth Circuit takes into account "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive, whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused." *Hamblin v. Mitchell*, 354 F.3d 482, 494-95 (6th Cir. 2003). "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).

The inquiry is directed to deciding whether the state court's determination of the issue was an unreasonable application of clearly established federal law. *Frazier v. Huffman*, 343 F.3d 780, 791 (6th Cir.), *as amended on reh'g*, 348 F.3d 174 (2003), *cert. denied*, 124 S.Ct. 1825 (2004); *United States v. Payne*, 2 F.3d 706, 715-16 (6th Cir. 1993) (inflammatory remarks in opening and closing statements and throughout trial were not cured by cautionary instructions); *United States v. Roberts*, 986 F.2d 1026, 1031 (6th Cir. 1993) (closing argument that appeals to the community conscience was cured by instructions). The giving of cautionary instructions also factors into the calculus of determining whether fundamental fairness was denied. *Serra*, 4 F.3d at 1356. Extensive prosecutorial misconduct during trial and during closing argument

justifies the granting of a writ of habeas corpus. *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000).

However, where the evidence pointing to the defendant's guilt is strong and the prosecutor's improper comments go to the nature and intent of the crime, not to the defendant's guilt or innocence of the crime, the improper comments may be "error, but the jury would probably have returned the verdict of guilty anyway," and habeas relief is not warranted. *Hamblin*, 354 F.3d at 495. "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997).

The Michigan Court of Appeals, the last court to issue a reasoned decision in this case, denied relief on Petitioner's prosecutorial misconduct claims, stating:

> The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). Prosecutorial misconduct issues are decided on a case-by-case basis. *Id.* The reviewing court must examine the pertinent portion of the record and evaluate a prosecutor's remarks in context. *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999). Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial. *Id.* Otherwise improper prosecutorial remarks might not require reversal if they address issues raised by the defendant. *People v Schutte*, 240 Mich App 713, 721; 613 NW2d 370 (2000). We review a claim of prosecutorial misconduct de novo. *People v Pfaffle*, 246 Mich App 282, 288; 632 NW2d 162 (2001). No error requiring reversal will be found if the prejudicial effect of the prosecutor's remarks could have been cured by a timely instruction. *People v Leshaj*, 249 Mich App 417, 419; 641 NW2d 872 (2002).
>
> Defendant argues that the prosecutor denied him due process and a fair trial by improperly shifting the burden of proof. He contends that the prosecutor's questions regarding whether he asked Castelew to testify or to make a statement to the police on his behalf were improper in light of

the fact that he had no obligation to present any evidence. We disagree. A prosecutor may not shift the burden of proof, *People v Fields*, 450 Mich 94, 115; 538 NW2d 356, 477; 592 NW2d 767 (1999). Defendant testified that Castelew would know that he was not carrying a bag when he was apprehended. The prosecutor's questions were designed to illustrate that defendant's assertions that he did not have a bag in his possession and that the police framed him were not credible. The questions did not improperly shift the burden of proof. *Fields*, *supra* at 112, 117. Furthermore, any prejudice created by the questions could have been cured by a timely instruction. Reversal is not warranted. *Leshaj*, *supra*.

*Nelson*, No.237820, slip op. at 4.

## 1. Comments on Silence

Here, Petitioner contends that the prosecutor's cross-examination of him was improper because she (the prosecutor) commented on his silence, while being questioned at the police station about the contents of the bag, after he was given his *Miranda* rights. The United States Supreme Court held in *Miranda* that a person accused of a crime has the right to remain silent when arrested and faced with accusation, and the arrestee's exercise of that right may not be used as evidence against him. *Miranda*, 384 U.S. at 467-73.

Following *Miranda*, the United States Supreme Court, in *Doyle v. Ohio*, 426 U.S. 610 (1976), stated that, once the defendant receives *Miranda* warnings, the use of his post-arrest silence to impeach his exculpatory story given at trial is "fundamentally unfair" and violates the Due Process Clause. *Doyle*, 426 U.S. at 619. The Court further stated that because the State is required to provide *Miranda* warnings, specifying the person's right to remain silent,[2] the reason for an arrestee's post-*Miranda* silence is

---

[2] In an introductory clause –one that is almost certainly dicta– *Doyle* stated that *Miranda* "require[s] that a person taken into custody be advised *immediately* that he has the right to remain silent, that anything he says may be used against him, and that he

"insolubly ambiguous."  *Id.* at 617.  Furthermore, implicit in the warnings is an assurance that silence will not carry a penalty.  *Id.* at 618; *Greer v. Miller*, 483 U.S. 756, 762 (1987).  Thus, where the defendant has not made a statement to the police, "[t]he *Doyle* footnote exception only permits the prosecution to use post-arrest silence to impeach the credibility of the defendant's version of what he did following arrest; the government cannot use the silence to impeach the exculpatory story itself or to draw inferences suggesting the defendant's guilt."  *Hassine v. Zimmerman*, 160 F.3d 941, 949 (3d Cir.1998).

If, however, the defendant opens the door to government questioning by his own remarks about his post-arrest behavior or defense counsel's questioning, *see Doyle*, 426 U.S. at 619 n. 11 (discussing the prosecution's permissible use of post-arrest silence "to challenge the defendant's testimony as to his behavior following arrest"), the government may use a defendant's silence for the limited purpose of impeaching his testimony about what he did after his arrest.

Furthermore, "when a defendant makes a post-*Miranda* statement on a particular subject, and then makes a second statement on the same subject at trial, a prosecutor can refer to post-arrest silence to expose any inconsistencies between the two statements."  *Kibbe v. DuBois*, 269 F.3d 26, 37 (1st Cir .2001).  The rule in *Doyle* simply

---

has a right to retained or appointed counsel before submitting to interrogation." *Doyle*, 426 U.S. at 617-618 (emphasis added). *Miranda's* holding, however, does not mandate a caution "immediately" upon arrest, although that probably has now become a near-universal, almost talismanic practice adopted by police agencies. In, *Miranda* the Court's attention was focused upon practices connected with in-custody interrogation, not the process of arrest; specifically, the Court held that an appropriate caution be first provided "if a person in custody is to be subjected to interrogation." *Miranda*, 384 U.S. at 467-468.

"does not apply to cross-examination that merely inquires into prior inconsistent statements." *Anderson v. Charles*, 447 U.S. 404, 408 (1980). "Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent." *Anderson*, 447 U.S. at 408. This is particularly true when the defendant does not invoke his right to silence, but rather is mute for a brief time between periods of conversation.

In this case, Petitioner received *Miranda* warnings, waived his rights after hearing those warnings, and talked to the police. When confronted with questions regarding the contents of the shopping bag, the shoe box, and the two taped-together cellophane packages, Petitioner said that he was not going to answer the questions, but did not request counsel or ask that the questioning cease. Then, at trial, the prosecutor questioned him about that period of silence, wanting to know why he did not deny that he was carrying the bag but rather was silent as to its contents.

Neither *Doyle* nor *Anderson* bars the prosecutor's questioning of Petitioner on cross-examination. *Doyle* holds that it is fundamentally unfair for the state to induce or encourage silence through *Miranda* warnings and then argue that this silence shows that the accused is guilty. However, "[w]here the accused initially waives his right to remain silent and agrees to questioning, . . . no such inducement has occurred. If the accused subsequently refuses to answer further questions, the prosecution may note the refusal because it now constitutes part of an otherwise admissible conversation between the police and the accused." *United States v. Harris*, 956 F.2d 177, 181 (8th Cir.1992). In the present case, it follows with even greater force that the prosecution was entitled to note Petitioner's period of silence regarding the bag of cocaine, because

after the period of silence, Petitioner continued to speak to the police.

The court concludes that the prosecutor did not violate Petitioner's right to due process at trial by referring to the brief period of silence (more accurately, his non-responsiveness) when questioned about the contents of the bag. The Michigan Court of Appeals' decision denying this claim was not an unreasonable application of applicable federal constitutional law.

### 2. Comments on failure to call Castelew as a witness

Petitioner also claims that the prosecutor improperly shifted the burden of proof to the defense by pointing out that Petitioner failed to present any witnesses, namely Castelew, to substantiate his testimony that he was not carrying a bag when he was apprehended by the police. "[W]here a defendant testifies at trial and advances an alternative theory of the case that would exonerate him from the crime, prosecutorial comments on the validity of the theory do not shift the burden of proof to the defendant." *Traylor v. Price*, 239 Fed. App'x 235, 239 (6th Cir. 2007). Indeed, in this case the prosecutor was careful to point out to the jury specifically that a defendant does not bear the burden of proof but argued that the jury was nevertheless free to consider the quality of the testimony presented by the defense. The Michigan Court of Appeals held that the prosecutor's comments were simply comments on the validity of Petitioner's defense, not an attempt to shift the burden of proof.

Because defendant actually testified at trial, the prosecutor's comments about the lack of testimony of alleged witness, Castelew, did not burden Petitioner's right not to testify, and thus, did not shift the burden of proof. A prosecutor may comment on a

defendant's failure to call witnesses to support his defense or alternate theory if he or she is doing so to test the defendant's credibility. [A] prosecutor is allowed to offer a rhetorical argument regarding a defendant's failure to produce witnesses who would corroborate his story. Those arguments or comments do not shift the burden of proof.

Petitioner's arguments that the prosecutor's comments shifted the burden to him to prove his innocence, which he asserts on habeas review, misapply the holding of *Griffin v. California*, 380 U.S. 609 (1965). *Griffin* held that neither court nor prosecutor may invite the jury to infer guilt from the defendant's decision not to testify. They may not "solemnize [ ] the silence of the accused into evidence against him," 380 U.S. at 614, or "suggest[ ] to the jury that it may treat the defendant's silence as substantive evidence of guilt." *Baxter v. Palmigiano*, 425 U.S. 308, 319 (1976) (emphasis added). However, nothing prevents the prosecution from commenting on the failure of the defense to call other witnesses, particularly where the defendant testifies or argues that such witnesses exist and suggests that, had they been called, they could have offered exculpatory testimony. *Gall v. Parker*, 231 F.3d 265, 311 (6th Cir.2000). In short, the prosecution is free to comment on the defense's failure to call any witnesses to contradict the government's case, except where the defendant alone has the information to do so. *United States v. Snow*, 552 F.2d 165, 168 (6th Cir.1977).

In the present case, Petitioner himself elected to testify and injected the possible existence of an exculpatory witness, Castelew, into the case, by testifying when and where he was with him or spoke to him, and how Castelew would explain that Petitioner was not carrying the bag containing the cocaine. In these circumstances, the prosecutor's rhetorical questions and comments about the defense's failure to call

Castelew was a permissible attack on Petitioner's credibility and a permissible inferential argument that the prosecution's evidence should be believed. The prosecutor was not suggesting to the jury that Petitioner was obligated to prove his innocence. Rather, she was arguing that Petitioner's testimony was unsupported and not worthy of belief. Thus, the prosecutor's comments did not shift the burden of proof to the defense and did not violate Petitioner's constitutional rights.

Even if the prosecutor's strategy were open to question, any possible prejudice would have been cured by the trial court's instructions regarding the proper burden of proof. *Steele v. Taylor*, 684 F.2d 1193, 1204-05 (6th Cir.1982).

In this case, the evidence of Petitioner's guilt was extremely compelling, if not overwhelming. Petitioner was observed by at least two police officers carrying (and, when approached, dropping) nearly a full kilogram of cocaine; with officers in earshot, his reflexive reaction was to blurt out, "I'm fucked." The court concludes that Petitioner fails to demonstrate that the complained of prosecutorial misconduct, if it was error at all, had an injurious effect or influence on the jury's verdict.

The Michigan Court of Appeals' decision rejecting this claim was a reasonable application of applicable federal constitutional law.

### C. Claim #4. The sentencing claim.

Petitioner's final claim is a sentencing claim. Petitioner alleges that (1) the trial court erred in departing upwards from the sentencing guideline range, and (2) he is entitled to retroactive application of the amended portions of Mich. Comp. Laws § 333.7403. As an initial matter, Respondent contends that Petitioner's sentencing claims are barred by procedural default. Petitioner contends that any procedural default

should be excused due to the ineffectiveness of appellate counsel.

Procedural default is not a jurisdictional bar to a review of the merits of a habeas petition. *See Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005) (citing *Trest v. Cain*, 522 U.S. 87, 89 (1997)). Consequently, a federal court is not required to address a procedural default issue before ruling against a habeas petitioner on the merits of his claims. When a procedural default issue presents a more complicated question and is unnecessary to the disposition of the case, a court may proceed directly to the merits of the petitioner's claims in the interest of judicial economy. *See Lambrix v. Singleterry*, 520 U.S. 518, 525 (1997); *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1089 (E.D. Mich. 2004); *see also Strickler v. Green*, 527 U.S. 263, 282 (1999) (considering merits of habeas claims where such inquiry mirrored procedural default cause and prejudice inquiry); *see also Cameron v. Birkett*, 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004) (same).

In the present case, resolving the procedural default issue will be more complex than deciding the substantive claims on habeas review and will require some consideration of the merits of those claims. Accordingly, in the interests of judicial economy, the court will address the merits of Petitioner's habeas claims without ruling on the procedural default issue.

First, a sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Friday v. Pitcher*, 200 F.Supp.2d 725, 744 (E.D.Mich. 2002). A sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment. *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000). As a general rule, federal habeas review of a state-

court sentence ends once the court makes a determination that the sentence is within the limitation set by statute. *Friday*, 200 F.Supp.2d at 744.

Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence. *Shanks v. Wolfenbarger*, 387 F.Supp.2d 740, 752 (E.D. Mich. 2005). Petitioner's claim that the state trial court improperly departed above the sentencing guidelines range would also not entitle him to habeas relief. *Welch v. Burke*, 49 F.Supp.2d 992, 1009 (E.D. Mich. 1999).

Second, a habeas petitioner does not have a federal constitutional right to retroactive application of more lenient state sentencing rules. *Dockins v. Hines*, 374 F.3d 935, 940 (10th Cir. 2004). Furthermore, the Michigan courts have already held that these sentencing provisions are applied prospectively to those offenses committed on or after the effective date of the amendment. *People v. Doxey*, 263 Mich.App. 115, 122, 687 N.W.2d 360 (2004), *appeal denied* 472 Mich. 878, 693 N.W.2d 818 (2005). Therefore, Petitioner's claims that he must be resentenced under retroactive application of the amended statute do not merit relief.

A similar challenge was addressed in *Estelle v. Booker*, No. 05-72458, 2006 WL 2250959 (E.D. Mich. 2006) (Rosen, J.). There, Judge Rosen, in adopting Magistrate Komives Report and Recommendation, stated:

> Petitioner first argues that he was entitled to a re-sentencing based on changes in Michigan sentencing laws. At the time of petitioner's conviction and sentence, the Michigan drug laws provided that a person guilty of possessing with intent to distribute a controlled substance (or a mixture of a controlled substance) in the amount of 650 grams or more may be sentenced to life imprisonment or any term of years, but not less then 20 years. *See* [Mich.Comp.Laws] § 333.7401(2)(a)(I), Historical and Statutory Notes, 2002 Legislation (West 2001 & Supp.2005). As amended by 2002 Mich. Pub. Act 665, the statute now provides for imprisonment of

life or any term of years for one convicted of possessing with intent to distribute over 1,000 grams of a controlled substance; for those convicted of possessing more than 450 grams but less than 1,000 grams, the statute provides for imprisonment of no more than 30 years. *See* [Mich.Comp.Laws] § 333.7401(2)(a)(i)-(ii). Petitioner contends that he is entitled to retroactive benefit of this provision. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

The public act which altered the Michigan drug laws explicitly provides an effective date of March 1, 2003. *See* Mich. Comp. Laws § 333.7401(2)(a)(i), Historical and Statutory Notes, 2002 Legislation (West 2001 & Supp.2005). The Michigan courts have determined that these amendments do not apply retroactively to cases concluded prior to the effective date of the amendments. *See People v. Thomas*, 260 Mich.App. 450, 459, 678 N.W.2d 631, 637-38 (2004). This conclusion is a matter of state law which is not cognizable on habeas review. *See Dickson v. Franklin*, 130 Fed.Appx. 259, 263-64 (10th Cir.2005). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

*Estelle,* No. 05-72458, 2006 WL 2250959, slip op. at 14.

There is no constitutional requirement that persons convicted of the same offenses receive the same sentence. *Frazier v. Manson*, 703 F.2d 30, 36 (2nd Cir. 1983) (citing *Williams v. Illinois*, 399 U.S. 235, 243 (1970)). A state legislature may prospectively reduce the maximum penalty for a crime even though prisoners sentenced before the effective date of the act would serve a longer term of imprisonment than a prisoner sentenced to the maximum term thereafter. *Frazier*, 703 F.2d at 36.

Furthermore, the court finds that appellate counsel was not ineffective. The standard of review for assessing whether appellate counsel was unconstitutionally ineffective also follows the standard set forth in *Strickland*, *supra.* A criminal defendant has no constitutional right to have every possible legal issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745 (1983), and tactical choices regarding issues on appeal "are

properly left to the sound professional judgment of counsel." *United States v. Perry*,

908 F.2d 56, 59 (6th Cir.), *cert. denied*, 498 U.S. 1002 (1990).  Here, because raising

the sentencing issue on appeal would have been meritless, the court finds that

appellate counsel was not ineffective for failing to raise that issue.

The court finds that Petitioner is not entitled to habeas relief on this claim.

### IV.  CONCLUSION

For the foregoing reasons, IT IS ORDERED that the petition for a writ of habeas

corpus is DENIED.


s/Robert H. Cleland_____
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  July 25, 2008


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, July 25, 2008, by electronic and/or ordinary mail.


s/Lisa G. Wagner_____
Case Manager and Deputy Clerk
(313) 234-5522